Filed 1/26/21  P. v. Villescaz CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL LEON VILLESCAZ,<br><br>Defendant and Appellant. | C091657<br><br>(Super. Ct. No. CRPR20207) |

In 1976, defendant was convicted of sodomy while confined in state prison.  (Pen. Code,[1] § 286, subd. (e).)  As a result of his conviction, defendant must register as a sex offender under section 290.

In November 2016, defendant was convicted of possession of a controlled substance and was sentenced to two years eight months in state prison.  Defendant was released on parole to Yolo County on July 9, 2018, with a parole expiration date of June 28, 2022.

---

[1]    Further undesignated statutory references are to the Penal Code.

1

As a section 290 registrant on parole and as special conditions of his parole, defendant was required to wear a global positioning system (GPS) monitoring device. (§ 3010.10.[2]) Special condition No. 068 required defendant to "participate in continuous electronic monitoring, e.g., global positioning system (GPS) technology." Special condition No. 073 required defendant to "charge the GPS device at least two times per day (every 12 hours) for at least 1 full hour for each charging time." And special condition No. 075 directed defendant to "contact [his] parole agent immediately if and when the device vibrates and/or makes an audible tone (beep)." Defendant signed forms outlining the general and special conditions of his parole on July 10, 2018, the day after he was released on parole.

On January 15, 2020, defendant's parole agent Troy Libonati filed a parole revocation petition in Yolo County Superior Court alleging defendant violated section 3010.10, subdivision (b), as well as his special parole conditions that required him to wear a GPS monitoring device. That same day, the court held an ex parte proceeding and found probable cause to preliminarily revoke defendant's parole.

According to the parole violation report, on January 10, 2020, at around 4:43 p.m., defendant's GPS device emitted a "low battery" vibrating alert. During "low battery mode," the GPS device vibrates numerous times to alert the wearer it needs to be charged. Despite this warning, defendant failed to charge his GPS device.

At 9:42 p.m. that same day, defendant's GPS device emitted a "critical battery" vibrating alert. In this mode, the device vibrates numerous times to warn the wearer that

---

[2]     Section 3010.10, subdivision (b)  provides:  "A person who is required to register as a sex offender pursuant to Section 290 shall not remove, disable, render inoperable, or knowingly circumvent the operation of, or permit another to remove, disable, render inoperable, or knowingly circumvent the operation of, an electronic, GPS, or other monitoring device affixed to his or her person as a condition of parole, when he or she knows that the device was affixed as a condition of parole."

the battery will go into "dead battery" mode unless the device is charged. Defendant again failed to charge his GPS device.

At 2:12 a.m. on January 11, 2020, defendant's GPS battery went into a "dead battery" mode. In "dead battery" mode, defendant's GPS device no longer provided tracking information for him. A few minutes later, the monitoring company contacted Libonati regarding the dead battery on defendant's GPS device. After investigating, Libonati confirmed defendant's GPS device was in "dead battery" mode. He contacted the Woodland Police Department, which dispatched police officers to defendant's last known location. Defendant was later arrested.

After defendant's arrest, Libonati retrieved defendant's GPS device from the detention facility where he was being held. Another agent was able to charge the device as intended, and the device was able to retain the charge as designed.

On January 17, 2020, defendant was arraigned on his parole violation charge. The court appointed defendant counsel. Defense counsel advised the court that defendant denied the parole violation charge and requested a hearing.

At the parole revocation hearing on February 14, 2020, the People introduced the parole department's monitoring reports for defendant's GPS device. Agent Libonati also testified. According to Libonati, he had supervised defendant on parole since September 2018, and was familiar with defendant's signed parole conditions, including condition No. 068, which required him to participate in continuous electronic monitoring. Libonati had numerous conversations with defendant about his obligation to keep his GPS device charged.

Defendant had a history of violating the terms of his parole and had been incarcerated at least five times for previous violations, including violations related to his GPS device. After defendant violated parole again in January 2020, Libonati picked him up from jail and provided him with another GPS device and a brand new charging system. At the time, Libonati again instructed defendant on how to utilize the equipment,

3

including that he needed to charge the device twice a day for one hour at a time. Libonati explained that when a GPS battery runs low, it will vibrate and buzz on the parolee's ankle to alert that the device needs to be plugged in.

In the early morning hours of January 11, Libonati received a call from the monitoring company alerting him that defendant's GPS device was in dead battery mode. After defendant was apprehended by police, agent Libonati retrieved his dead GPS device. The device appeared to be in working order and was able to be charged.

Libonati testified that defendant could charge his GPS device at the parole office during business hours. While Libonati conceded during cross-examination that the parole office was scheduled to close at 5:00 p.m., only 15 minutes after defendant received the first low battery notification around 4:45 p.m., defendant was supposed to charge it twice a day and had failed to do so for several days before receiving the notification. Libonati also testified that in addition to the parole office, other public places like libraries and businesses such as Starbucks also had outlets available to charge devices. And although Libonati did not allow the device to run all the way down to low to check to see if it vibrated, he testified that he was able to send a signal to the device to check whether it vibrated, which it did.

Defendant did not present any evidence or witnesses at the parole revocation hearing. His counsel did argue, however, that the parole condition requiring defendant to wear a GPS device was unreasonable.

The court allowed the parties to file supplemental briefs following the hearing. Defense counsel filed a brief arguing that sections 3004 and 3000.07 as well as parole condition No. 068, requiring defendant to wear a GPS device, violated the Eighth Amendment, that section 286, subdivision (e), of which defendant was convicted in 1976, violated the equal protection clause, and that the evidence presented at the hearing did not prove a violation. The People's opposition brief argued that defendant was subject to electronic monitoring pursuant to section 3010.10, that his underlying sex offense did not

4

violate equal protection, and that they had proved defendant knowingly circumvented the operation of his GPS device by failing to charge the battery.

At a subsequent hearing in February 2020, the parties argued their respective positions regarding the constitutionality of defendant's GPS monitoring parole condition and whether the People had proved a violation. Following argument, the trial court declined to find that defendant's 1976 sex offense conviction under section 286, subdivision (e) was unconstitutional, or that the GPS monitoring condition violated his constitutional rights.

Having rejected defendant's constitutional claims, the court found by a preponderance of the evidence that defendant violated the terms of his parole by not charging his GPS device. The court sentenced defendant to 180 days in county jail and awarded him 97 days of credit (49 days of actual custody time and 48 days of conduct credit). Defendant timely appealed.

## DISCUSSION

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief setting forth the facts of the case and requesting that this court review the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days elapsed, and we received no communication from defendant.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

5

## DISPOSITION

The judgment is affirmed.

/s/
Robie, J.

We concur:


/s/
Hull, Acting P. J.


/s/
Murray, J.